We'll call the next matter for the morning, which is United States of America v. Angell. Is it Angell or Angel? Well, that's, with the two L's, I just assumed the accent on the second, but I'm sure I'll be corrected if I got it wrong. I'm sorry. Mr. Epstein. Good morning. May it please the court. My name is Robert Epstein. I'm here today on behalf of the appellant, Mr. John Angell, with the court's permission. Angell? Angell, yes. I'd like to reserve five minutes of my time. I have two choices, and they're wrong. Thank you. Thank you, Your Honor. The briefing has actually narrowed the issues a bit on this appeal. With respect to point one, the government concedes that the district court's jury instructions as to counts 12 to 22 were erroneous, and that the court omitted an essential element. While the government doesn't concede that it's, quote, plain error, I think this court's jurisprudence makes absolutely clear that it is, and I refer to cases such as Dobson, Xavier, Haywood, all cases we discuss in our briefs, all cases which the government ignores. And in light of the court's instructional error, I think at the very least, counts 12 to 22 have to be remanded for a new trial. Unless the court has questions... You're conceding remand as opposed to an outright reversal then? No, Your Honor, and that's where I was just going to go. Unless the court has questions with respect to point one, I'd like to focus the remainder of my time on points two and three, the two sufficiency points, and if the court would agree with me as to those points, then yes, we're seeking an outright reversal here. I would like to ask you, though, one of the points on plain error is whether there would be, you know, an offense to justice by allowing this to stand. And your adversary says the record is fulsome enough to find that even if a properly instructed jury had received all three elements of the charge, there would have been a conviction. Why do you disagree with that? Well, because there was not evidence from the minor or from anyone else as to the 22 counts the government elected to charge. So while there was some evidence of abuse in this case, he did not testify in the minor to any abuses to any of the 22 counts, which the government elected to charge, pegged to 11 particular weekends. And, in fact, the government abandoned the claim of actual abuse in closing argument. The government had spoken by saying we will show you evidence of abuse every single weekend that we charge in this indictment. And by the close of the case, given the minor's testimony, the government abandoned that claim and said we do not have to prove to you that abuse occurred on any one of these 11 weekends. Because from their point of view, there was an attempt each time. They just couldn't pin specific moments in time to each count. Your Honor, they didn't argue that there was an attempted sexual act each time. What they argued was actually all the jury needed to find, and this was consistent with the court's erroneous instruction. They argued all the jury needed to find each of the counts 12-22 was just a crossing of state lines with the intent to have sex with the minor. With the absence of an instruction on an actual sexual act taking place, was the instruction provided by the court significantly different on the counts 12-22 from the instruction on counts 1-11? No, Your Honor. No, Your Honor. And in that respect, they were very deficient. The instructions on count 12-22 omitted the most important element of the offense being charged there. The offense is aggravated sexual abuse of a minor, and he omitted the element that there has to be some sexual contact or at least an attempted sexual contact. Well, now, aren't there a lot of child abuse cases in which there are allegations of sexual contact over a period of time without designating a specific date on which any one of them occurred? Yes. Well, not exactly, Your Honor. The way these cases are typically charged is to charge a date range, say up to a six-month date range, say the first half of 2004, and then to elicit testimony from the victim paying the abuse within that date range. And it could be by referring to some type of benchmark event, a birthday party, Thanksgiving, Christmas, something from which the child can say, yes, I was abused within a couple of months of that event. And nothing like that occurred here, which is why when we get to the sufficiency point, the evidence here doesn't even reach the sufficiency threshold. For purposes of point one, the government would have to show that the evidence as to sexual abuse or attempted sexual abuse is overwhelming, is uncontroverted, and that plainly wasn't the case here. The evidence as to sexual abuse as to any of these weekends was extremely controverted, so controverted that the government abandoned the claim in closing argument. Well, what is really at stake are allegations as to sexual activity as discrete events. Yes. Because the evidence is extremely strong when you throw the tape into it that some sexual activity occurred at some point during this entire course of time. Right. And we acknowledge in our brief, and I acknowledge here today, that viewed in the light most favorable to the government, there is evidence of sexual abuse. However, and it's a big however, the evidence is completely insufficient that any abuse or attempted abuse occurred on any of the 11 particular weekends the government charged. The evidence is insufficient as to those 22 count. There's no evidence of abuse or attempted abuse on those weekends or any date reasonably close to them. There's no evidence that he crossed state lines with the purpose of having sex on those weekends. Well, you don't have to show the purpose. Are you under 22, 24, 23? Yes. But our case law says it doesn't have to be the purpose. It doesn't have to be the only purpose, but it has to be a significant motivating purpose. And absent any evidence that on those weekends any sexual act occurred or any attempted sexual act, then we're left with the fact that it was his job to drive the boy across state lines from his father's house to his mother's house. He had a legitimate purpose for taking him across state lines. And the jury wouldn't have had a basis to infer that there was an improper purpose, absent some evidence that there was actually a sexual act on those weekends or an attempted sexual act. The government did offer evidence, though, of why he would have been motivated to cross state lines for the purpose of, as opposed rather than simply doing it because it was a job to transport. Didn't they? I mean, didn't they show some financial? Didn't they put in evidence intended to show some financial advantage to doing so? Well, the government argued that in their response to the brief, which I think is an extremely weak argument. What they're arguing is that the jury could have actually inferred that his real purpose every weekend that he drove the child, whether there was an attempted sexual act or not, that his real purpose was sex because he was being paid so little. But he wasn't being paid so little. No jury could have rationally inferred that. He was being paid $600 a weekend to take him. If you do that over the course of a year, that's, you know, per hour, that's $75,000 a year. I understand that's your argument, but we're talking about sufficiency. So what I'm doing is pointing out evidence that they suggested less than a financial or less than a strong financial motive for this transport as opposed to other motivations. I don't think a rational jury could have possibly found that. I mean, it would have been one thing if the government put into evidence that on these weekends he had the opportunity to make twice as much money or during the week his regular pay was twice as much. But they've also got a taped conversation which not only explicitly makes clear that there was some sexual relationship between these two, but it goes beyond that in terms of how it develops some kind of relationship that was not just sex, the importance of the contact between these two. That's evidence also, is it not, that would go to suggest a motive? Well, but not as to the particular travel charge. And that's the key because, you know, on specific dates. Yeah. And, you know, as the Supreme Court made clear in Hansen and Mortensen, what we're looking at is the particular travel charge, what the Supreme Court referred to as the travel denounced. And the purpose has to be for that particular travel. And they simply didn't prove that. Well, the government also offered evidence from, I think, a psychiatrist or psychologist about the grooming steps that are taken. And certainly the jury, viewing the light most favorable to the government as we must, had that to rely upon as well, correct? There was no evidence, though, even of grooming on these particular weekends. There was no testimony that anything – Didn't CB testify about the efforts that your client made to make him comfortable, to talk about the tough family circumstances and all of that? And would that be something from which the jury could infer that was part of the preliminary steps to the actual illegal contact? That wouldn't show, though, that on these particular weekends, or any dates reasonably close to those weekends, that his purpose was sexual conduct on those weekends. And we don't even have testimony from CB that there was any type of grooming even on these weekends. I understand your argument. So you're suggesting that the evidence is devoid of sufficient evidence? Yes, Your Honor. To support sexual activity on any of these discrete 11 events? Yes, Your Honor. Not a single one of them? Not a single one of them. Not even close. And I recognize this is a difficult case for this court, because there is some evidence of abuse here, but there's insufficient evidence as to any of the 22 counts that they elected to bring. And I'd just like to point out that the government would have the option here, if the case is reversed, as I think it should be, they do have the option here of trying again. I mean, the government maintains there was abuse before the dates alleged in the indictment. They have that option, but if it went back and 1 through 11 are upheld, they've also got, what, a 360-month sentence already? Yes. We'll have you back in a moment. Thank you. Mr. Epstein. Ms. Morgan. Good morning, members of the panel, and may it please the Court. With respect to the issue of counts 12 through 22, as the Court has already pointed out, the standard is plain error. And while the government concedes that an element was not instructed upon, there still remains the fact that the burden is on the defendant to establish that his substantial rights were affected, number one, and number two, that the outcome seriously affected the fairness, integrity, or public reputation. That's a tough hill for you to climb, though, even if the burden is on the defendant here, isn't it? I mean, the omission by the trial court of an element as significant as this, what's the difference between these two different sections, these two different statutes? Why don't you knock out the actual sexual activity? There are several differences. In addition to the actual sexual activity as an element of one statute, Your Honor, there's also the fact that Section 2241 speaks to very young children, children under the age of 12. That limitation is not in Section 2423. And it also speaks to forcible sexual acts toward children between 12 and 16. That limitation is also not in Section 2423B. 2423B is directed to a variety of sexual acts, including commercial sexual acts with someone under the age of 18. So there are various distinctions between the two statutes. But the reason that the failure to instruct on this particular element is not fatal in this particular case with these particular facts is because the government's entirety of evidence about the intent of this defendant when he was traveling across state lines was the ongoing sexual relationship between the defendant and the victim. And in order for the jury to infer what the defendant's intent was, they had to believe that the defendant was engaging in sexual activity with the minor.  You can contrast that with a case, for example, where a defendant engages in an online chat with an 11-year-old child over in New Jersey from Pennsylvania. They have discussions about meeting for sexual activity. The defendant packs his car and loads up some condoms and some lubricant and a NapQuest map to get to the victim's house. And just as he's getting on the bridge, he's either arrested or his car breaks down or something of that nature, and he doesn't actually cross state lines. That is a circumstance where the defendant's intent has to be inferred not from an ongoing sexual relationship, but from what he packed in the car, the fact that he did the NapQuest, the fact that he had these chats discussing a sexual relationship in the future. So that's a very different type of case than what you have here, where the government's proof of what he was thinking, at least in part, every time he crossed the state lines was the fact that he had already for an entire year before the first charge been grooming this child and been engaging in sexual activity with this child. All right, but the government still has a burden of proof that never shifts. And this is not a criticism of how the government's charged this case, but any of us who have ever tried cases, any of us who have ever prosecuted cases, know what it's like to have a witness tell us one thing prior to trial and then testify differently at the time of trial. And this is a situation where your victim witness has not exactly been as specific at the time of trial as he probably was prior to trial, isn't it? Well, Your Honor, respectfully, I don't... In fact, his degree of specificity shifted actually while on the witness stand, didn't it? Respectfully, I would disagree, Your Honor, and here's why. You don't think that it is a change to say it happened all the time to saying that it happened nearly all of the times? Is there any kind of shift? When I initially asked him about this, I said, when you were riding alone with the defendant, how often would the sexual contact occur? And he answered, probably, I think, every time we were alone. We're talking about a 17-year-old boy. I understand. And it was the jury's job to assess his credibility, view him on the witness stand, listen to his intonation when he was testifying, and assess the credibility of that statement and what that statement meant. He was later asked several questions on cross-examination and talked about... His quote was, probably every time that we were alone, it happened. And then the defense attorney said, every single time, and we began to press him on the issue, and then he said most times. I think with respect to his answers, we're talking about... So you see no difference between them, no material difference between those two answers? I believe that the victim was saying the words every time. He said, probably. He said, I think. Sometimes it's best in argument to concede that which is patent, Ms. Morgan, because it may not kill you anyway. Well, Your Honor, I... What evidence does the record contain that is supportive of, not necessarily specific dates, but on or about periods with respect to any of these 11 counts? Because Mr. Epstein is suggesting that you don't have anything in the record supportive of any of the 11 and those dates aren't. I understand that, Your Honor, and I would go so far as to say that Mr. Epstein is suggesting the government should have done less. What the government did was set about to identify unequivocally weekends when this victim was alone with the defendant, because that's when he indicated that the sexual abuse occurred. And so the government painstakingly went through the EZ Pass records in order to identify particular weekends within timeframes where multiple witnesses testified that the boy traveled by himself and that his sister was not with him. The child talked about this happening every time, and I agree he did equivocate somewhat when he was cross-examined. But I would suggest to the court that this is how people talk. I mean, if someone says to you, do you lock your car every single time you get out of the car, you would say, yeah, pretty much. If pressed on that issue, you might begin to consider, well, maybe there's a time when I forgot to lock the car, so pretty much most times I lock the car. But we're talking about a pattern of behavior here and how someone is conveying that a pattern of behavior occurred while allowing for the possibility that maybe there was one time I'm not remembering when it didn't happen. So from your point of view, in terms of the record in front of the jury and how they could connect either conduct with bad intent, which is counts 1 through 11, or actual sexual assault or attempted assault, which is 12 through 22, your view is we connect it because the child said it happened virtually every time they were alone. Witnesses testified about the weekends when the sister wasn't present because of bad relations with the father. The father's testimony about we had the Eagles game, the sister wasn't there, and some science project. Piecing all that together, so you think that was enough for the jury to have inferred that those weekends that were specified in the indictment were weekends where they were alone, and because the child said the abuse happened when we were alone, there's enough. Do you have corroborative E-ZPass evidence, too? We have corroborative E-ZPass evidence on many of the counts. The E-ZPass evidence corroborates the weekends, but although a lot of the abuse took place on I-95, some of the abuse took place at other locations, so the fact that on a given weekend there was not time on I-95 to have abuse, the jury could still infer that there was abuse at some other location. That's correct, and to infer that either abuse occurred or attempted abuse occurred, which was what they were required to find if the third element was instructed. But if you look at due process and the important component parts of due process, is not an instruction on each of the elements of a crime such an important part of due process that if one of the elements is forgotten, is not included, is purposely not included, that this is a denial of due process to the extent that that conviction should not stand? Well, Your Honor, I would disagree that it was purposely not included, but I would also add that when we're looking at case law on this issue, including case law in this circuit, the issue is given the evidence presented in the case, would the jury have necessarily concluded evidence sufficient to support that element? That's the standard when we're talking about plain error and an effect on substantial rights. And in this case, given the nature of the evidence particular to this case, which is an ongoing, repeated, serial sexual molestation of this child whenever the child is wanted for defending, that necessarily supports the third element that was not instructed upon. Well, we have, for instance, Virgin Islands v. Rosa, where there was a misstatement of one of the elements. Is there another Third Circuit case where there was an element absolutely not instructed? Yes, the materiality element in the fraud case in United States v. Weaver, which is a 2007 decision of this Court. With respect to pinpointing particular weekends that this abuse occurred, as I was saying before, it's as if the defense is suggesting we should have done less and been less particular in our indictment, even though the government did the hard work of narrowing it down to these weekends, as suggested in United States v. Ransom, a case cited by the defense. But we all know if we had charged a broad date range and said, over the course of these four years the defendant engaged in this activity, we would now be here listening to defense arguments of multiplicity, of lack of due process, of lack of specificity in the indictment, of not meeting the notice pleading requirements by not indicating when this activity occurred. They are suggesting that we should have done less and given the defense less notice of what he was being charged with. And if you take this argument to its ultimate conclusion, that because we have a young child who doesn't keep a calendar like any other child would not and doesn't remember specific dates at some point in the past, as most children do not, and was molested over and over and over by someone who had constant access to them, wherein the events are blended together, that's a person we simply cannot trust. That means the younger the child gets and the less they're able to attach an event to a date, and the more frequently they're abused and the more it all blends together because to their perception it's happening on a constant and ongoing basis, the less able the government will be to charge these cases. Certainly that is not a direction that we want to be able to go. If in the next case we have a five-year-old who says, if this happened five times when I was five years old, I have no idea what day it happened, then the government won't be able to charge that case simply because, even though we know the defendant had access to the victim during the course of that year, we cannot pinpoint the exact date when it happened or to abandon that case. Taking that argument to its logical conclusion is a very disturbing one. The government did something very different here. The government did what the court suggested in Ransom. Setting out the exact kind of sexual acts that occurred, this victim testified about a variety of sexual activity that occurred not only in the vehicle, but also on one occasion in a rest stop, sometimes in transit, sometimes while parked. This victim talked about the number of acts being virtually every time that they were alone together, and we also provided, based on our unequivocal knowledge that the defendant was alone with the victim, the time periods when this occurred and exact dates when it occurred, based on actual turnpike records of the travel of this vehicle. So this is not similar to the cases at defendant's site where, for example, there's no evidence that the defendant even had access to the victim during that time period, where the defendant was overseas during the time period, where the defendant didn't live on the Indian Reservation during the time period. This is not that case. This is a case where we know the defendant had access. We know the defendant was alone with the child, and the child testified that that is when these incidents occurred. Plus, we have the defendant's confession to the crime in a telephone conversation with this victim, where he is admitting that he feels bad about what he did to the child because the child was so young. When the child says that he enjoyed sex with the defendant better than he does with girls, the defendant volunteered, well, do you think that's because we had such a close emotional relationship? Clearly, the child testified about ongoing grooming of him, even before the molestation began when he was seven years old, talking about disparaging the father, talking about sex, talking about sports, talking about the things that interested the child most, being a confidant when it was clear from the evidence in the record that the child had no confidant, and was turning this person into a father figure through the defendant's manipulation. We have the child's testimony about the appearance of the defendant's penis, and a doctor's testimony corroborating that. We have the psychologist's testimony about delayed disclosure, about the shame associated with this conduct, about the grooming that occurs to prepare the child to be molested, and then the child talks about very graphic incidents of oral sex, anal sex, fondling, et cetera, beginning when he was seven years old, and then we have the government's charge occurring for the first time when the victim is eight years old. So already at that point, the sexual abuse has been ongoing, repeated, and serial. That information is what the jury necessarily used to infer the defendant's intent, a significant and motivating intent whenever he crossed state lines to engage in sex with the minor. That is how they made their determination into elements one and two, by necessarily believing the evidence as to element three. So for those reasons, we are asking the court to affirm the decision of the jury, and I see that my time is expiring right now, unless the court has any additional questions. That concludes my remarks. Thank you very much. Thank you. Mr. Epstein, rebuttal. Your Honor, she makes a very powerful closing argument to a jury that sexual abuse occurred in this case, but what she can't point to is any evidence in the record from which a jury can rationally find that it happened on or about any of the 11 particular weekends charged. What about the Easy Pass documentation that's in the record? That only shows that they traveled on those weekends. Together with C.B.'s testimony, at the very least, that it happened most of those times. Right, but he testified he doesn't know if it happened on any of those 11 weekends. He was explicit about that. I don't know about those weekends. Why does he have to if this other evidence exists? Can't that fill in the gap of lack of specificity as to dates in his testimony? None of that other evidence fills in that there was abuse on those dates, or reasonably close. We know there's evidence of some abuse. We have no idea from this record when it occurred. You know, I want to make a couple of statements as to point one, because I think it's important. This Court has clear jurisprudence in Xavier and King and Dobson and other cases. The evidence as to the missing element has to be conclusive in order for the omitted bad jury instruction not to be found plainer. And here we are so far from conclusive as to the missing element. We're talking about whether it's even sufficient. So at the very least, those convictions on counts 12 to 22 have to be vacated and remanded for a new trial. As to the sufficiency point, I think it's important to look at what C.D. testified to because he didn't say virtually all of the time. And it wasn't just on cost that he said most of the time. He was led on redirect. She attempted to bring him back to what he had apparently said prior to trial every time. And he said, no, all I can say is for the most part. And she said, well, didn't you tell us this prior to trial? And he denied it. He said, no, I didn't tell you that. So all we're left with is most times for the most part. And not even the government in their brief argues that a jury could have found beyond a reasonable doubt as to any of these particular weakens on the basis of most times testimony. And that's why they're in the position in their brief of arguing that the jury could have just looked at his direct testimony, which they're mistakenly characterizing as every time. It was very equivocal. It was not precise. It was probably, I think, every time. They're arguing that the jury could disregard the rest of his testimony. They can't. A rational jury has to look at the entire testimony. On cost, he clarified. I'm not saying every time. I'm saying most times. On redirect, he continued to say most times for the most part. That's all I can say. And a jury cannot take most times for the most part and conclude beyond a reasonable doubt that anything occurred on a particular weekend. And it's telling that the government, the prosecutor heard his testimony in the courtroom, and she didn't argue in closing argument, based on the testimony you heard, you can find that every time, every weekend they were alone, something occurred. She didn't argue that at all. She argued we don't need to prove that to you. We don't need to prove it happened even once on those weekends. And that was, you know, she was wrong as to the law. This is correct, though, as to counts 1 through 11. They don't have to prove actual sexual assault on counts 1 through 11. Right, but they have to prove that the travel was for the purpose of sex. And if there wasn't even an attempt at sex on those weekends, the only purpose that the jury can infer there is she had it. Whoa, whoa, whoa. Wait a minute. Now, you're suggesting that there has to be evidence of some kind of attempt of sexual activity on those dates charged as 1 through 11? I'm arguing that absent... That ain't an element of the offense. You can't mean that. Well, what I mean by that is absent evidence of an attempt on those weekends, the jury can only infer that he was driving them for the purpose he was being paid for, which was to drive them to his mother's house. There's no basis for which the jury could say that a purpose of that particular travel on that weekend was sexual conduct when there was no attempt made. What about the grooming? I mean, the grooming continued, didn't it? Isn't the aim of the grooming sexual contact? If not on the day the grooming occurs, at least with that victim? Again, we don't have evidence. We don't have any testimony that there was even grooming on any of these particular weekends. Wasn't all of his conduct towards the boy grooming? I don't think you could say that any discussions that he had with the boy could be violative of either of these statutes. You would need more than that. He's building the boy up. He's conditioning the boy so he can have sex with him when he wants to have sex with him. And the taped conversation says what the taped conversation says. I mean, we have the transcript of that as, more importantly, the jury did. Thank you very much, Mr. Epstein. Thank you, Ms. Morgan. The case was well argued. Thank you. We'll take it under advisement.